IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BECKY RAMSEY-LEDESMA, <br><br>   Plaintiff-Relator, <br><br> v. <br><br> CENSEO HEALTH, L.L.C., *et al.*, <br><br>   Defendant. | ) ) ) ) Case No. 3:14-cv-0118-M ) ) ) ) JURY TRIAL DEMANDED ) ) Judge Barbara M.G. Lynn ) ) |

**JOINT REPORT OF PARTIES' FED. R. CIV. P. 26(f) PLANNING MEETING**

On November 30, 2016, the following counsel conducted a planning conference by telephone pursuant to Fed. R. Civ. P. 26(f) and this Court's November 16, 2016 Order: For Plaintiff Becky Ramsey-Ledesma ("Plaintiff-Relator"), Matthew K. Organ, Roger A. Lewis, Stephanie J. Harris, and Emily D. Gilman of Goldberg Kohn Ltd. and Robert Clary of Robert Clary, PLLC; for Defendants Censeo Health, L.L.C. ("Censeo") and Joy Ridlehuber, Brian D. Roark and J. Taylor Chenery of Bass, Berry & Sims PLC and Elizabeth D. Scott of Akin Gump Strauss Hauer & Feld LLP; and for Defendant Altegra Health, Inc. ("Altegra"), George B. Breen and John S. Linehan of Epstein Becker & Green, P.C. (collectively, "Defendants"), and file the following Joint Report.

1. **A brief statement of the claims and defenses.**

   a. **Relator's Statement:**

Relator alleges that Defendants engaged in a scheme to allow Medicare Advantage Organizations ("MAOs") to obtain millions of dollars in payments from the federal government (the "Government"), to which they were not entitled, in violation of the False Claims Act.

Specifically, Relator alleges that Censeo and Altegra obtained inflated capitation payments for Censeo's MAO clients by generating false and fraudulent risk adjustment data that was submitted to the Government in order to calculate capitation payments to the MAOs. Relator alleges that the scheme works as follows:  Censeo contacts targeted MAO members and schedules an in-home assessment visit by a Censeo provider.  Instead of creating *bona fide* medical records, however, Censeo's providers simply complete a "check-the-box" assessment form and diagnose a wide variety of serious conditions without necessary lab results and diagnostic testing.  In many cases, diagnoses are inferred from the medications that the MAOs' members are taking.  Censeo's providers return the completed assessment forms to Censeo, and coders employed by Censeo or Altegra, a Censeo subcontractor, "extract" diagnosis codes from the assessments. These codes are completely unsupported, yet they are provided to CMS to justify MAOs' requests for higher capitation payments.  Relator alleges that this scheme violated various federal rules and regulations applicable to MAOs, and was designed to, and did, result in improper upcoding and, thus, inflated capitation payments to the MAOs.

Relator alleges Counts I and II against Censeo, Ridlehuber, and Altegra, for violation of 31 U.S.C. § 3729 (a)(1)(A) & (B) of the False Claims Act for submitting, and/or causing MAOs to submit, improper and inaccurate risk adjustment data to the Government, and for falsely certifying the accuracy, completeness and truthfulness of such risk adjustment data.  Relator also alleges Count V against Censeo, Ridlehuber and Altegra for violation of 31 U.S.C. § 3729(a)(1)(C) for conspiring to violate 31 U.S.C. § 3729 (a)(1)(A) & (B).  Relator seeks actual damages, treble damages and civil penalties, and attorneys' fees and costs.[1]

---

[1] Relator also asserted various claims under the False Claims Act against Humana Inc. ("Humana"), Tufts Health Plan Medicare Preferred, Tufts Associated Health Plans, Inc. d/b/a Tufts Health Plan Medicare Preferred and Tufts Associated Health Maintenance Organization, Inc. (collectively, "Tufts"), James Edward Barry Greve, Jr., and Mark Dambro, M.D.  These claims were dismissed pursuant to Rules

b. **Censeo and Ridlehuber's Statement:**

Censeo denies the allegations in the Second Amended Complaint and denies that it submitted or caused the submission of any false claims. During the time period relevant in this lawsuit, Censeo contracted with physicians to conduct in-home health assessments of certain of Humana's and Tufts' Medicare Advantage beneficiaries. Censeo, or its third party coding vendors, extracted from the assessment forms completed by the physicians ICD-9 codes, or codes from the International Classification of Diseases, some of which ultimately were converted to Hierarchical Condition Category codes ("HCCs") that affect risk adjustment calculations in the Medicare Advantage program. Censeo paid physicians a flat fee for each assessment form that passed the quality assurance process, and Humana and Tufts paid Censeo a flat fee for every assessment that passed through quality assurance. Neither Censeo nor its contracted physicians' compensation was tied to HCCs obtained from the assessments. In addition, Censeo paid its coding vendors a flat fee for each assessment reviewed for coding; vendor compensation was not tied to either ICD-9 codes or HCCs.

Relator cannot establish that Censeo submitted or caused to be submitted false claims to the government. Censeo has never submitted any risk adjustment data or claims directly to the government, much less false claims. Censeo did not control the HCCs that Humana or Tufts ultimately submitted to the government. Humana and Tufts also received diagnosis data for their members from sources other than Censeo. If Humana or Tufts received the HCC in question from another source, then codes provided by Censeo did not affect risk adjustment calculations. Thus, to establish that Censeo caused a false claim to be submitted to the government under the FCA, Relator must establish that Censeo provided an HCC to Humana or Tufts, the Humana or

---

12(b)(6) and 9 of the Federal Rules of Civil Procedure. Relator has reserved the right to pursue relief against the dismissed Defendants pursuant to Fed. R. Civ. P. 59 and to appeal the dismissal of the claims

Tufts plan did not receive that HCC code from another source for that member, Humana or Tufts submitted that code to the government for purposes of the risk adjustment process, the government used that code to increase the capitated payment provided to Humana or Tufts under the risk adjustment process, and the member in question did not actually have the condition or diagnosis associated with the HCC, thereby rendering the claim false.  Relator cannot satisfy this burden.

Relator cannot establish a claim against Defendant Joy Ridlehuber for the reasons stated above and for additional reasons.  During the relevant time period, Ridlehuber was Censeo's Director of Quality.  She played no role in recruiting or contracting with physicians, developing the assessment process and form, or transmitting HCCs to Humana or Tufts.  To the extent she oversaw the quality assurance and coding processes, Ridlehuber never instructed any coders to produce improper ICD-9 codes and helped to develop robust policies and procedures to ensure that all ICD-9 codes were supported by the physicians' documentation in the assessment forms. Relator cannot establish that Ridlehuber caused a false claim to be submitted to the government.

    c.    **Altegra's Statement**

Relator, a former employee of Defendant Censeo, alleges that during the time period at issue in this case false risk adjustment data was created, which, she contends, was submitted to CMS resulting in Humana and Tufts receiving more monies than they were entitled.  The false data was allegedly generated as a result of home assessments performed by physicians retained by Censeo, which were subsequently coded by coders employed by Censeo and Altegra.  During these in-home assessments, Relator alleges that Censeo's physicians improperly diagnosed high-risk conditions based on cursory patient reviews and deficient health assessment forms.  Relator alleges that following completion of those assessments, the forms were improperly coded.  On

---

against them.

the basis of these allegations, Relator asserts presentment, false record, and conspiracy theories of FCA liability against Censeo, Altegra, and Joy Ridlehuber under 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C).

Altegra denies any and all claims lodged against it, including all allegations that imply or assert that it submitted or caused to be submitted any false or fraudulent claim, that it created or caused to be created any false record or statement material to a false or fraudulent claim, or that Defendants engaged in any conspiracy to defraud the government. Notably, this Court has already recognized that there are no allegations "that Altegra itself submitted any allegedly false claims for reimbursement or certified any allegedly false claims." United States ex rel. Ramsey-Ledesma v. Censeo Health, LLC, 2016 U.S. Dist. LEXIS 135392, at *29 n.2 (N.D. Tex. Sept. 30, 2016). Altegra was hired by Censeo to perform International Classification of Diseases ("ICD") coding based on home assessment forms provided by Censeo. Altegra was paid a flat fee for each assessment form it coded; Altegra's compensation was not based in any manner on coding outcomes or results, such as for the use of specific codes or the number of codes identified.

Altegra's defenses include, but are not limited to, that Relator cannot establish that "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." United States v. Bollinger Shipyards, Inc., 775 F.3d 225, 260 (5th Cir. 2014). Relator cannot establish that Altegra's coding practices violated applicable laws or regulations or were otherwise false or fraudulent. Nor can Relator establish that any of Altegra's allegedly improper coding was material to the government's reimbursement to Humana or Tufts. Additionally, Relator cannot show that Altegra caused Humana or Tufts to submit false certifications; Altegra did not submit and did not have any discretion, direction, or control over the submission of risk adjustment data or claims to the

government and Relator is unable to draw the requisite link between any allegedly improper coding by Altegra and any submitted claims and alleged inflated government payments. Even if there was a showing that Altegra produced incorrect codes that caused and were material to certain false claims and government payments—and there is no such showing—there is no evidence that Altegra acted with the requisite scienter or with the purpose of defrauding the government.

Finally, Relator cannot establish that Altegra entered into an unlawful agreement to get false claims paid by the government or that there was specific intent to defraud the government or any acts taken in pursuit thereof.

2.   **A proposed time limit to file motions for leave to join other parties**.

Relator proposes that the deadline for joining additional parties be **June 1, 2017**, to permit adequate time for the exchange and review of written discovery and Defendants' and third parties' anticipated document productions, and to resolve any discovery disputes. Relator notes that June 1, 2017 is approximately half-way through the proposed fact discovery schedule**.**

Defendants propose that the deadline for joining additional parties be **April 3, 2017.**

3.   **A proposed time limit to amend pleadings**.

For the same reasons stated above, Relator proposes that the deadline for amending the pleadings is **June 1, 2017**. Relator also proposes that any amendments by any party should be accompanied by a motion for leave to amend**.**

Defendants propose that the deadline for amending the pleadings be **April 3, 2017.** They further note that any amendment should be accompanied by a motion for leave to amend. Relator already has amended her complaint twice and was granted leave to amend a third time.

4.   **Proposed time limits to file various types of motions, including dispositive motions**.

The Parties propose that the deadline for filing case dispositive motions shall be **March 9, 2018**.

5.   **A proposed time limit for initial designation of experts.**

Relator proposes that all parties will simultaneously disclose their initial experts and provide initial expert reports no later than **November 30, 2017** to coincide with the proposed fact discovery deadline of November 30, 2017.

Defendants propose that the party bearing the burden of proof on the issue about which expert testimony is offered will provide a written designation of the name and address of each expert witness who will testify at trial for that party on such issue(s) and shall otherwise comply with Fed. R. Civ. P. 26(a)(2) no later than **October 31, 2017**.

6.   **A proposed time limit for responsive designation of experts.**

Relator proposes that all parties will simultaneously disclose responsive experts and provide responsive expert reports no later than **January 19, 2018**.  In the event that the Court adopts Defendants' proposal for phased expert disclosures (e.g., the party with the burden of proof discloses experts first), then the Relator respectfully requests that the Court build sufficient time into the expert discovery schedule for the party with the initial burden to submit a rebuttal report(s) to the extent that any experts or expert opinions are first disclosed by the other party(ies) at and/or prior to the responsive expert deadline.

Defendants propose that any party without the burden of proof on an issue but who wishes to utilize an expert witness shall file a written designation of the name and address of each expert witness who will testify at trial for that party on such issue(s) and shall otherwise comply with Fed. R. Civ. P. 26(a)(2) no later than **January 3, 2018**.

7.   **A proposed time limit for objections to experts**.

The parties propose that objections to experts (i.e. <u>Daubert</u> and similar motions) will be filed no later than **March 9, 2018**.  However, if the Court adopts Relator's proposal for the sequencing and timing of expert disclosures and discovery outlined in Paragraphs 5, 6, and 8, including the proposed deadline of February 23, 2018 to depose responsive expert witnesses, the parties respectfully request that objections to experts be filed no later than **March 30, 2018**, to allow sufficient time to prepare Daubert and similar motions.

8. **A proposed plan and schedule for discovery, a statement of the subjects on which discovery may be needed, a time limit to complete factual discovery and expert discovery, and a statement of whether discovery should be conducted in phases or limited to or focused upon particular issues**.

   a. **Subjects on which discovery may be needed**.

   The subjects upon which discovery will or may be needed include, but are not limited to, the following:

   i. Relator will seek discovery regarding:

      1. The individuals who performed in-home risk assessments for Censeo;

      2. The identification of MAO members to receive in-home risk assessments and the performance of Censeo's in-home risk assessments, including all practices, policies, procedures, guidelines and instructions with regard thereto;

      3. The coding of Censeo's completed assessment forms by Censeo and/or Altegra coders, including all practices, policies, procedures, guidelines and instructions with regard thereto;

      4. The risk adjustment data and coding data generated by Censeo and/or Altegra;

      5. Objections, concerns and/or complaints regarding Censeo's in-home risk assessment program, and any forms, guidelines, instructions or manuals drafted or used in connection therewith, and/or the assessments themselves;

      6. Objections, concerns and/or complaints regarding the coding of Censeo's completed assessment forms, and any forms, guidelines, instructions or manuals drafted or used in connection therewith;

      7. The submission of risk adjustment data or coding data to the Government, certifications made to the Government by the parties or any MAO in connection therewith, claims for payment made by the MAOs, and capitation payments received by the MAOs;

      8. Censeo's contractual relationship with any MAO in connection with its in-home risk assessment program;

      9. Censeo's contractual relationship with Altegra;

    10. Communications with primary care physicians for MOA members that were identified to receive in-home risk assessments;

    11. Revenue generated in connection with Censeo's risk-assessment program; and

    12. Relator's employment and termination.

  ii. Censeo and Ridlehuber will seek discovery regarding:

      1. Complaints or issues that Relator raised during her employment at Censeo;

      2. Documents in Relator's possession related to Censeo;

      3. Relator's background, training, and employment history;

        4. Relator's allegations that Censeo and/or its contracted physicians produced unsupported diagnoses or HCC codes;

        5. Relator's allegations related to specific clinical conditions and the diagnosis of those conditions;

        6. Relator's experience with Censeo's MAO clients;

        7. Relator's allegation that Defendant Ridlehuber caused the submission of false claims to the government for payment;

        8. Relator's allegation that the Censeo Defendants knowingly violated the False Claims Act;

        9. Relator's provision of information to the government;

        10. Any damages that Relator alleges the Censeo Defendants caused her or the government to suffer; and

        11. Expert testimony that Relator intends to offer to support her allegations.

    iii. Altegra will seek discovery regarding:

        1. Documents in Relator's possession relating to Altegra;

        2. Relator's allegations relating to specific clinical conditions and the diagnosis of those conditions.

        3. Information supporting Relator's contention that Defendants "knowingly" (as that term is defined in 31 U.S.C. § 3729(a)(1)) engaged in a scheme to defraud the government.

        4. Information supporting Relator's contention that Defendants' coding practices and any certifications made by Humana and Tufts

were objectively false under applicable laws, regulations, and authoritative coding guidelines.

5. Information supporting Relator's contention that Defendants' actions caused the submission of false claims and were material to the government's reimbursement to Humana and Tufts.

6. Information supporting Relator's contention that Defendants violated 31 U.S.C. § 3729(a)(1)(C) by knowingly conspiring to violate the False Claims Act.

7. Relator's employment history.

8. Relator's provision of information to the government.

9. Any damages Relator alleges that Defendants caused the Relator or Government to suffer.

10. Expert testimony that Relator intends to offer to support her allegations.

The parties' identification of anticipated discovery topics in this Rule 26(f) Report is not meant to be and should not be interpreted as exclusive, exhaustive or final. The parties reserve the right to seek discovery on any topics that are now relevant or become relevant during the course of discovery. Each party also reserves the right to conduct discovery on each and every topic listed by the other parties in this Rule 26(f) Report.

b. **Fact discovery deadline**.

The parties propose that the deadline for the close of fact discovery is **November 30, 2017**.

    c.    **Expert discovery deadlines**.

The Relator proposes that the deadlines for expert discovery are as follows: (i) the parties will have until **January 12, 2018** to depose the other sides' initial experts; and (ii) the parties will have until **February 23, 2018** to depose the other sides' responsive experts. In the event that the Court adopts Defendants' proposal for phased expert disclosures and builds in a rebuttal expert phase at Relator's request as discussed above in Section 6, then the Relator respectfully requests that the Court also build sufficient time into the expert discovery schedule for deposition(s) of any such rebuttal experts.

Defendants propose that the deadlines for expert discovery are as follows: (i) the parties will have until **December 15, 2017** to depose the other sides initial experts; and (ii) the parties will have until **February 16, 2018** to depose the other sides' responsive experts.

    d.    **No phased or limited discovery**.

The parties do not believe that discovery should be conducted in phases, or limited to or focused on particular issues.

9. **What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed.**

Relator believes that this case will require more than 10 depositions per side. Similarly, Relator believes that this case will require more than 25 interrogatories per side.

The parties will work cooperatively to avoid involving the Court with any issues related to the length or number of depositions permitted, or the number of interrogatories permitted.

10. **Proposed means for disclosure or discovery of electronically stored information ("ESI") and a statement of any disputes regarding the disclosure or discovery of ESI.**

The parties anticipate requesting and/or producing information from electronic or computer-based media. The parties jointly propose that the production of electronically stored information ("ESI") be made under the following protocol:

    a.    Relator requests that Defendants produce:

        i.    Bates numbered and endorsed single page tiff files with a page-level opticon .opt file for all documents, with the exception of database and multimedia files (e.g., Excel files, CSV files, Microsoft Access, and any other database or database-like files), which should also be produced in their native form;

        ii.    Native files should be named after the first Bates number of the produced document and be accompanied by a slip sheet; and

    b.    Defendants request that Relator produce:

        i.    All responsive electronic documents, with the exception of unredacted spreadsheets and any multimedia files, in searchable PDF format;

        ii.    All responsive unredacted spreadsheets and multimedia files in native format only, with a Bates-stamped placeholder image. Defendants request that Relator provide an LFP file.

    c.    Document level extracted text named after the first Bates number of a document produced should be provided for all documents. Documents that do not produce extractable text and redacted documents should be in optical character recognition format.

    d.    All metadata fields mutually agreed upon by the parties shall be produced in a Concordance compatible .dat file with Concordance default delimiters. Images and corresponding text files should be stored in separate directories, IMAGES and

TEXT. All native files should be stored in a directory named NATIVES at the root of the delivery volume.

e. The Parties shall either provide a text file with the beginning Bates number and native path for all native files produced or include the native path information in the metadata .DAT file.

f. Image, text and native files should all have the beginning Bates number as the file name (i.e. Bates000001.pdf, Bates000001.txt, Bates000001.xls).

g. Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

h. The Parties reserve the right to later request copies of additional files in native format.

i. If a particular document or type of document warrants a different format, including in hardcopy, the parties will cooperate to arrange for the mutually acceptable production of such documents.

j. Microsoft Word documents should be imaged in a manner that displays tracked changes, as applicable. Power Point documents should be imaged in a manner that displays notes pages.

k. Any attachments to emails shall be produced with, and linked to, the parent email.

l. All data shall be produced on CD, DVD, hard-drive or FTP, depending on data volume.

m. The Parties represent that they have taken reasonable measures to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise.

      n.      The Parties agree not to intentionally degrade the searchability of any documents or electronic documents produced as electronic files except as a party deems necessary to redact a document based on an assertion of privilege.

      o.      The Parties do not anticipate any problems in connection with electronic or computer-based discovery and will seek to work amicably to resolve any disputes that arise without this Court's involvement.

11. **Any proposals regarding the handling and protection of privileged or trial-preparation material that should be reflected in a Court Order**.

The parties anticipate requesting, by separate motion, a protective order including a "claw back" provision to protect privileged and confidential information.

12. **A proposed trial date, estimated number of days required for trial and whether jury has been demanded**.

The parties propose that trial commence on or about **July 9, 2018**. The parties believe that ten-to-fifteen (10-15) court days will be required. A jury trial has been demanded.

13. **A proposed date for further settlement negotiations**.

During the conference, the parties considered the nature and basis of their claims and defenses and discussed the possibilities for promptly settling or resolving the case. The parties believe some additional investigation is appropriate before beginning settlement discussions in earnest, but are committed to taking those investigative steps and revisiting the possibilities for a prompt resolution as soon as is practicable. The parties propose no later than **June 1, 2017** for further settlement negotiations.

14. **Objections to Fed. R. Civ. P. 26(a)(1) asserted at the Scheduling Conference, and other proposed modifications to the timing, form or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made**.

The parties agree to exchange disclosures under Fed. R. Civ. P. 26(a) by **January 5, 2017**. During the conference, the parties did not propose further modifications to the timing, form or requirement for disclosures under Rule 26(a).

15. **Whether the parties will consent to trial (jury or non-jury) before U.S. Magistrate Judge Irma Carrillo Ramirez (consent form attached).**

    The parties do not consent to trial before a U.S. Magistrate Judge.

16. **Whether the parties are considering mediation or arbitration to resolve this litigation and a statement of when it would be most effective (e.g., before discovery, after limited discovery, after motions are filed, etc.), and, if mediation is proposed, the name of any mediator the parties jointly recommend to mediate the case.**

    The parties are not considering arbitration to resolve this litigation, and are not proposing mediation at this time.

17. **Any other proposals regarding scheduling and discovery that the parties believe will facilitate expeditious and orderly preparation for trial**.

    The parties anticipate requesting, by separate motion, a protective order to ensure HIPAA compliance and to protect the confidentiality and/or proprietary nature of documents to be produced by the parties.

    The parties have agreed to exchange written discovery requests and responses via e-mail.

    The parties agree to continue to meet and confer regarding the timeline for discovery and dispositive motions and may contact the Court seeking to extend certain deadlines at appropriate times.

18. **Whether a conference with the Court is desired**.

    The parties do not desire a conference with the Court at this time.

19. **Any other matters relevant to the status and disposition of this case, including any other Orders that should be entered by the Court under R. 16(b) and (c) and 26(c)**.

    The parties have no additional matters to report relevant to the status or disposition of this case at this time, other than as reflected above.

Dated: December 15, 2016

Respectfully submitted,

BECKY RAMSEY-LEDESMA


By: /s/ Stephanie J. Harris
    One of Her Attorneys

Robert Clary
ROBERT CLARY, PLLC
7110 McKamy Boulevard
Dallas, Texas 75248
State Bar No. 04325300

Matthew K. Organ
Roger A. Lewis
Stephanie J. Harris
Emily D. Gilman
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000
(admitted *pro hac vice*)


CENSEOHEALTH, LLC and JOY RIDLEHUBER


By: /s/ Elizabeth D. Scott
    One of Their Attorneys

Elizabeth D. Scott
Texas Bar No. 24059699
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4624
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com

Robert S. Salcido
D.C. Bar No. 447951
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Ave., N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4095
Facsimile:  (202) 877-4288
rsalcido@akingump.com
(admitted *pro hac vice*)

Brian D. Roark
Tennessee State Bar No. 20262
J. Taylor Chenery
Tennessee State Bar No. 27147
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Facsimile:  (615) 742-6293
broark@bassberry.com
tchenery@bassberry.com
(admitted *pro hac vice*)

ALTEGRA HEALTH INC.


By:  /s/ Mark S. Armstrong
     One of Its Attorneys

Mark S. Armstrong
Texas State Bar No. 01321900
EPSTEIN BECKER & GREEN, P.C.
Two Houston Center
909 Fannin, Suite 3838
Houston, TX 77010
Telephone: (713) 300-3210
Facsimile:  (713) 300-3230
marmstrong@ebglaw.com

George B. Breen
D.C. Bar No. 428665
John S. Linehan
D.C. Bar No. 979721
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W.
Washington, DC 20037
Telephone: (202) 861-1823
Facsimile:  (202) 861-3523
gbreen@ebglaw.com
jlinehan@ebglaw.com
(admitted *pro hac vice*)

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on December 15, 2016, she caused a copy of this **JOINT REPORT OF PARTIES' FED. R. CIV. P. 26(f) PLANNING MEETING** to be served via the Court's ECF/electronic mailing system upon all counsel of record.

/s/ Stephanie J. Harris
Stephanie J. Harris